

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-1995

# In Re: Unisys Corp

Precedential or Non-Precedential:

Docket 94-1801

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"In Re: Unisys Corp" (1995). *1995 Decisions.* Paper 175.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/175

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94-1801

———————

IN RE:  UNISYS CORP. RETIREE MEDICAL BENEFIT
"ERISA" LITIGATION

*Ralph Bieber and Donald J. Paquette, individually
and on behalf of all members of the Unisys Class
previously certified by the Court who were
participants in the fall 1989 and fall 1991 early
retirement incentive programs and their eligible
spouses and dependents (referred to by the Court
as "Unisys 1989 and 1991 VERIP Plaintiffs"),

Appellants

*(Pursuant to F.R.A.P. 12(a))

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District:  0313-2:  MDL 969)
District Judge:  Honorable Edward N. Cahn, Chief Judge

———————

Argued
May 4, 1995
Before:  MANSMANN, SCIRICA and McKEE, Circuit Judges.

(Filed    June 28, 1995)

———————

MEMORANDUM OPINION OF THE COURT

———————

MANSMANN, Circuit Judge.

        This appeal is one of five before us arising from the

termination of post-retirement medical plans offered to retirees

and their spouses through Unisys Corporation and its corporate

predecessors, Sperry Corporation and Burroughs Corporation.  This

appeal focuses specifically on claims made by those who retired from Unisys pursuant to "voluntary early retirement incentive programs" offered in the fall of 1989 and the fall of 1991.[1]

In November, 1992, Unisys announced that effective December 31, 1992, it would terminate existing post-retirement medical plans funded through cost-sharing and replace them with a revised plan which would gradually shift the entire cost of medical coverage to the retirees. A spate of lawsuits filed pursuant to ERISA followed. Cases pending in several states were transferred to the Eastern District of Pennsylvania and three plaintiff classes were certified pursuant to Fed. R. Civ. P. 23(b)(2).

As members of one of the subclasses of Unisys early retirees, the Unisys VRIPs argued that in accepting an early retirement package, they had relinquished future income and accrual of pension benefits in return for attractive items in the VRIP package. One of these items, they said, was the right to receive vested lifetime medical benefits. Because the 1992 termination of the post-retirement medical plan substantially affected the medical benefits under which they had retired, the VRIPs challenged the termination, alleging breach of fiduciary duty, equitable estoppel, and breach of contract.

_____

[1]. Throughout the course of the litigation this class of retirees has been referred to as "VRIPs" of "VERIPs". At the time of their retirement, the VRIPs were participants in the Unisys Post-Retirement and Disability Plan.

The breach of contract claim had two components.  The VRIPs argued first that the plan documents contained lifetime language and a reservation of rights clause, making the plan documents ambiguous.  The VRIPs contended that once this ambiguity was resolved through extrinsic evidence, it would be clear that there had been a promise of lifetime benefits and that this promise was inconsistent with the plan termination.  The second breach of contract theory advanced by the VRIPs was based upon an alleged bilateral contract created when the VRIPs accepted the terms of the early retirement offers.  The district court summarized this theory as follows:

> [VRIPs] base their contract claim on a bilateral contract theory . . . that by signing up for the VERIP, they entered into separate bilateral contracts independent of the normal retiree benefit plans, and that this created a binding contract under which Unisys was not free to change the terms.

1994 W.L. 284079, 28 (E.D. Pa. 1994).

The VERIP claims, along with claims made by Sperry regular and incentive retirees and the Burroughs incentive retirees, were tried to the district court.  Ruling on the VRIP claims, the district court rejected each of the theories of liability and entered judgment for Unisys.  On July 11, 1994, the court entered a superseding order and final judgment which was certified for appeal pursuant to Fed. R. Civ. P. 54(b).  It is from this order that the VRIPs appeal.  Because we conclude that the district court properly disposed of each of the VRIP claims, we will affirm the order of the district court.

I.

In this opinion, we confine our discussion to the VRIPs' bilateral contract theory.[2]  The VRIPs rest this claim on statements made in documents issued by Unisys in September, 1989 and July, 1991, extending an early retirement option and explaining the terms of the early retirement offers.  The VRIPs argue that the terms of these solicitation documents obligate Unisys to continue the post-retirement medical benefits plan and to fund a percentage of the cost of these benefits.  Because the terms of the 1989 and 1991 early retirement offers differ, we highlight the relevant features of each before discussing the applicable law.

<u>The 1989 Retirement Offer</u>

On September 15, 1989, Unisys announced a voluntary retirement incentive program for eligible employees.  This program was detailed in a September 25th mailing.  One of the "two major elements" of the plan was described as:

> a lifetime retirement enhancement that
> adds two years to your age and service
> for calculations of your benefits under

---

[2].      The law as it applies to the remaining VRIP claims based on breach of contract and equitable estoppel is fully explored in our opinion in appeal numbered 94-1800.  Because the law set forth there applies equally to the claims of the VRIPs, in affirming the order of the district court we adopt that analysis and do not reiterate it here.  With respect to the breach of fiduciary duty claim, the district court found that "the Unisys VERIP plaintiffs . . . did not present any evidence which suggested a breach of fiduciary duty. . . ." 1994 W.L. 284079 at 33.  Having found no ground upon which to challenge this finding, we adopt the analysis of the district court; the VRIPs do not have a cognizable legal claim for breach of fiduciary duty.

> the Unisys Pension Plan formula and your
> points in determining your contribution
> rates for the Unisys Post-Retirement and
> Extended Disability Medical Plan.

The age and service enhancement was referred to elsewhere in the document as a "lifetime service-related benefit."

The VRIPs contend that the "lifetime" statements contained in the offering were made in conjunction with a separate announcement by Unisys that those retiring outside the time-frame of the offering would not be eligible to receive Unisys-subsidized medical coverage once they reached the age of 65. The VRIPs argue that the coupling of the early retirement offer with the announcement limiting medical benefits for other retirees led them to believe reasonably that they would have greater retirement security if they opted for the early retirement plan. Use of the word "lifetime", they say, meant that they were entitled to expect to receive medical benefits indefinitely.

For purposes of evaluating the VRIPs' position, it is important to note that the offering document also contained a brief description of the Unisys Post-Retirement and Extended Disability Plan and charted the employee's monthly percentage costs. The following language was included below the monthly cost table:

> Unisys will attempt to maintain your
> contribution at the levels in effect during
> the year in which your participation begins.
> However, this cannot be guaranteed, given the
> unpredictable conditions that continue to
> influence post-retirement medical coverage,
> such as rising medical costs and legislative
> actions.

## The 1991 Retirement Offer

In July, 1991, Unisys offered a second early retirement plan to employees retiring between July 25, 1991 and October 31, 1991. This plan did not feature enhanced medical benefits but did provide for certain incentive payments based on the employee's age and service. It also contained a lump-sum payment option not offered to regular retirees. Reference was made to the Unisys Post-Retirement and Extended Disability Plan and, as in the 1989 offer, a chart was included for purposes of calculating the employees' monthly percentage costs for medical coverage. Unlike the 1989 offer, however, the 1991 document contained an explicit reservation of rights clause:

> The Unisys Post-Retirement and Extended Disability Medical Plan provides the same coverages as the Unisys Medical Plan Option 2 available through the Unisys Flexible Benefits Program. Unisys cannot, however, guarantee that post-retirement medical coverage will not be changed in the future. The company continues to reserve the right to modify or terminate this coverage at any time. . . .
>
> Although Unisys will attempt to maintain your contributions at the levels in effect during the year in which your participation begins, the Company cannot guarantee that the contribution levels will remain unchanged in the future. The Company continues to reserve the right to increase contribution levels at any time.

The VRIPs argue that acceptance of this offer, too, created a contract obligating Unisys to continue providing subsidized medical coverage. They attempt to avoid the

reservation of rights language in the offer, arguing that Unisys did not reserve the right to modify or terminate benefits for those electing early retirement but intended that the clause apply only to employees choosing to retire at a later time. The same logic is applied to the clause reserving the right to increase contribution levels.

## II.

The sole issue we must address is whether the 1989 or 1991 Unisys early retirement offers entitle the VRIPs to vested medical benefits. We conclude that they do not.

In support of their position that the early retirement offers were sufficient to establish enforceable contracts for lifetime medical benefits despite restrictive language in the underlying benefits plans, the VRIPs cite one case in which a district court held that an independent bilateral contract claim may be cognizable under ERISA. See Sprague v. General Motors Corp., 843 F. Supp. 266 (E.D. Mich. 1994). Relying on Sprague, the VRIPs contend that statements made in the Unisys offers of early retirement were sufficient to create contracts, the terms of which were are variance with the underlying Unisys benefits plans. We are convinced that Sprague is factually inapposite. We decline, therefore, to follow its reasoning.[3]

---

[3]. Because the Sprague facts are so dissimilar from those presented here, we do not reach the question of whether we could or would, under our own precedent, adopt the Sprague legal analysis in a factually similar case.

In Sprague, 84,000 General Motors retirees and their surviving spouses filed suit pursuant to ERISA in order to prevent the restructuring of medical benefits. From this large pool of retirees, four classes were certified. Two classes, early retirees who signed long-form or short-form documents accepting written offers of early retirement under incentive plans, are relevant here. These early retirees claimed that GM, through a number of early retirement incentive plans, had offered them a "special deal" not available to others. By the terms of this "deal", GM "agreed to continue health care benefits at no cost to them throughout their retirement at the same level they received before retirement." 943 F. Supp. at 269. GM disputed this, contending that it had never intended to vest lifetime health benefits and, in fact, had promised early retirees nothing more than enhanced pension benefits.

Because the court determined that the documents evidencing acceptance of early retirement were facially ambiguous, additional evidence was introduced to establish the full scope of the early retirement package. The GM early retirees relied "on information provided to them, both written and oral, at the time of retirement." Id. at 270.

Sixty-four documents describing benefits available to early retirees were introduced into evidence as was testimony from human resources and supervisory personnel detailing communications to the early retirees concerning medical benefits. The court summarized this evidence as follows:

> Although various formulations exist,
> virtually all of the benefit explanations
> provided to the early retirees by GM contain
> statements regarding both the duration of
> health care benefits ("for life," "during
> retirement," "continued after retirement,"
> "lifetime," "will be continued," "for the
> rest of your lives"); and the cost of
> benefits ("no cost to retiree," "paid up,"
> "at corporation expense," "without cost,"
> "corporation paid basis," "at GM's expense,"
> "paid for life by General Motors," "fully
> paid by GM").

843 F. Supp. at 317.

> The court stressed that:
> GM repeatedly used the lifetime language. It
> appears in many of the benefit summaries
> relied on by plaintiff class, in addition to
> the SPDs. In addition, GM supervisors and
> personnel representatives often assured
> potential retirees that health care would be
> provided for their lifetimes.

Id. The court concluded that the GM early retirees had reason to
believe that they had been offered and had accepted a special
package with features distinct from those available to regular
retirees; it was reasonable for them to assume that limitations
set forth in the regular benefits documents had no application to
them. GM's claim that the "lifetime" language used in the
benefit summaries was of no legal consequence in light of
disclaimers in actual plan documents failed due to overwhelming
evidence of the employees' reasonable reliance on multiple
contrary statements made by those with authority to bind GM.

The overwhelming evidence of use of "lifetime" language
and the early retirees' reasonable reliance thereon is

conspicuously absent in this case.[4]  Here, there is no suggestion

in the offers of early retirement or in statements made to the

VRIPs that Unisys undertook a contractual obligation separate

from the underlying medical benefits plan available to all

retirees.  Like the regular retirees, the VRIPs were entitled to

receive benefits in accordance with the then-existing post-

retirement medical plan.

Most importantly, despite the VRIPs' creative argument

to the contrary, it is also clear that both the 1989 and 1991

offering documents "specifically alerted the [VRIP] participants

. . . that the contribution rates were not guaranteed.[5]  The 1989

offering stated that contribution rates "cannot be guaranteed."

The 1991 offering is even more explicit in that it includes an

unambiguous reservation of rights clause.  These disclaimers are

sufficient to defeat the VRIPs' contention that they reasonably

believed that their medical benefits were vested.

---

[4]. We recognize that the 1989 VRIP did contain the phrase
"lifetime retirement enhancement."  The use of the word
"lifetime" in this context is dramatically different from the
assurances detailed in Sprague.  We cannot accept the VRIPs'
argument that use of this phrase in the offering document was
sufficient to allow them to conclude reasonably that medical
benefits had vested.  See Chevrin v. Seelzer Bingham Pumps, Inc.,
1990 W.L. 303125 (D. Ore. 1990) (no ambiguity created where plan
document used the term "Lifetime Maximum Benefit").

[5]. The district court, in an abundance of caution, went
beyond the clear language in the offering documents to consider
the reservation of rights clause set forth in the summary plan
description.  We are convinced, however, that it is not necessary
to look beyond the offering documents in order to reach a
disposition with respect to the VRIPs' bilateral contract claim.
The limitations contained in the offering are consistent with
those in the underlying plan and create no ambiguity.

While we sympathize with the unfortunate position in which the VRIPs find themselves, we are not able to offer them legal redress. We agree with the district court that "Unisys unambiguously reserved its right to increase contribution rates and/or terminate the medical plan", 1994 W.L. 284079 at 31 (footnote omitted), and give weight to its finding that the VRIPs "presented no testimony from any VRIP participant who made a specific inquiry about the duration of his medical benefits and was given misleading, or false, information." Id. We conclude, therefore, that the VRIPs have failed to establish the existence of an enforceable bilateral contract.

III.

Having considered each of the VRIP claims of error and determining that the district court did not err, we will affirm the order of the district court.